IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY GRAHAM,

      Plaintiff,                    No. 2:08-cv-2533 GEB KJN P

    vs.

JUBB, et al.,                       ORDER AND

      Defendants.             FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

      Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis. This civil rights action is proceeding on plaintiff's November 28, 2011 third amended complaint ("TAC"). On February 2, 2012, defendants Jubb and Whitted filed a motion to dismiss on the grounds that the TAC fails to state a cognizable deliberate indifference claim under the Eighth Amendment. Plaintiff has not filed an opposition, but seeks an extension of time to file an opposition, and requests appointment of counsel. For the reasons set forth below, the court denies the motions for extension of time and motions for appointment of counsel, and recommends that defendants' motion to dismiss be denied. Moreover, based on plaintiff's present medical condition, the court recommends that this action be stayed for a period of four months.

II. Plaintiff's Third Amended Complaint

Plaintiff's TAC names two defendants, Correctional Officer Whitted, and Correctional Counselor Jubb.  Shortly after plaintiff was transferred to California State Prison, Sacramento ("CSP-SAC") in April of 2007, he was assigned to the Enhanced Outpatient Program ("EOP")[1] by Dr. Moghaddas, a psychiatrist.  (Dkt. No. 59 at 4.)  Plaintiff alleges that the EOP "is reserved for the more severe cases of mental illness and requires almost constant supervision.  Daily mental health groups and an interview with a mental health clinician (once weekly) are required."  (Id.)  Plaintiff alleges defendants informed plaintiff that "these doctors don't run shit!  We run this [EOP] program!  And if we want you out, you're out of here!"  (Dkt. No. 59 at 5.)  Plaintiff alleges his level of care was reduced from EOP to CCMS at the request of corrections staff.  (Dkt. No. 59 at 6.)  Plaintiff contends he was unable to attend his mental health groups on several occasions, one of which extended for a two week period.  (Dkt. No. 59 at 5.)  Plaintiff contends that he was denied his rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment when defendants conspired together to have plaintiff removed from the mental health program which ultimately resulted in plaintiff attempting suicide.  (Dkt. No. 59 at 3.)

III. Legal Standards - Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus,

---

[1] "The EOP level of care is for inmates who suffer 'Acute Onset or Significant Decompensation of a serious mental disorder characterized by increased delusional thinking, hallucinatory experiences, marked changes in affect, and vegetative signs with definitive impairment of reality testing and/or judgment,' and who are unable to function in the general prison population but do not require twenty-four hour nursing care or inpatient hospitalization." Coleman v. Schwarzenegger, 2009 WL 2340820, * 15 n.24 (E.D. Cal, Aug. 4, 2009) (citations omitted).

551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969); <u>Meek v. County of Riverside</u>, 183 F.3d 962, 965 (9th Cir. 1999). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. <u>Twombly</u>, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. <u>Hal Roach Studios v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. <u>Bretz v. Kelman</u>, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. <u>Ivey v. Bd. of Regents of Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).

"When ruling on a motion to dismiss, [the court] accept[s] all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." <u>See</u> <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1072 (9th Cir. 2005). Moreover, where a plaintiff appears without counsel in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. <u>Karim-Panahi v. Los</u>

Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).

### A. Eighth Amendment Claim

Defendants argue that plaintiff fails to allege any facts demonstrating that defendants were aware of any excessive risk to plaintiff, or that they purposely denied, delayed, or prevented plaintiff's treatment, or personally caused plaintiff any harm.

#### i. Eighth Amendment Standards

Plaintiff's claim involves his mental health care and therefore falls within the purview of the Eighth Amendment.[2] In order to state a claim for relief under the Eighth Amendment for inadequate prison mental health or medical care, plaintiff must allege "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A medical need is serious if "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Deliberate indifference is proved by evidence that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837

---

[2] In the TAC, plaintiff also alleged that his allegations demonstrate a violation of his Fourteenth Amendment rights. (Dkt. No. 59 at 3.) However, because plaintiff's interests in mental health care are protected by the Eighth Amendment, plaintiff's claims proceed as Eighth Amendment claims, not Fourteenth Amendment claims. See Estelle, 429 U.S. at 97 (claims of deliberate indifference to medical needs analyzed under the Eighth Amendment); Whitley v. Albers, 475 U.S. 312, 327 (1986) ("We think the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners in cases such as this one, where the deliberate use of force is challenged as excessive and unjustified.").

(1994).  Mere negligence is insufficient for Eighth Amendment liability.  Frost v. Agnos, 152 F.3d 1124, 1128 (1998).

Whether a defendant had requisite knowledge of a substantial risk of harm is a question of fact, and a fact finder may conclude that a defendant knew of a substantial risk based on the fact that the risk was obvious.  Farmer, 511 U.S. at 842.  While the obviousness of the risk is not conclusive, a defendant cannot escape liability if the evidence shows that the defendant merely refused to verify underlying facts or declined to confirm inferences that he strongly suspected to be true.  Id.  "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment."  Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted). Deliberate indifference may be shown by the way in which prison officials provide medical care, Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988), or "may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm."  Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003). Deliberate indifference in the medical context may also be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need.  Jett, 439 F.3d at 1096.  However, a mere difference of opinion between a prisoner and prison medical staff as to appropriate medical care does not give rise to a § 1983 claim.  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

ii.  Application

Defendants argue that because defendants both told plaintiff that they believed plaintiff was "faking it," defendants did not subjectively believe plaintiff was at risk.

Although neither a physician's negligence nor a prisoner's disagreement with a particular course of treatment states a claim for deliberate indifference, a prison medical staff's acts or omissions will constitute deliberate indifference if staff members knew of and disregarded an excessive risk to an inmate's health.  Farmer, 511 U.S. at 837.  Prison officials are deliberately indifferent to a prisoner's serious medical needs when they "interfere with treatment once

5

1  prescribed." Estelle, 429 U.S. at 104-05.  The Ninth Circuit has found deliberate indifference
2  where prison officials "deliberately ignore the express orders of a prisoner's prior physician for
3  reasons unrelated to the medical needs of the prisoner." Hamilton v. Endell, 981 F.2d 1062,
4  1066 (9th Cir. 1992) (overruled on other grounds) (reversing summary judgment where prison
5  officials forced prisoner to endure a plane flight that resulted in ear injury, in direct contravention
6  of a treating physician's previous orders); Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th
7  Cir. 1989) (per curium) (reversing summary judgment where medical staff knew that pretrial
8  detainee had head injury, but prescribed contraindicated medications, disregarding evidence of
9  complications to which they had been specifically alerted by private treating physician); Tolbert
10 v. Eyman, 434 F.2d 625 (9th Cir. 1970) (finding cognizable claim for deliberate indifference
11 where warden refused to authorize prisoner's receipt of medicine that had been previously
12 prescribed by a physician); Cf. McGuckin, 974 F.2d at 1062 (where surgery recommended by
13 prisoner's prior physician was severely delayed, court was unable to hold doctors liable because
14 prison administrators, not the doctors, were responsible for scheduling treatment).

> Suspicions of malingering may also be considered an ulterior motive supporting an inference that a defendant failed to take a plaintiff's condition seriously and thus acted recklessly in failing to provide proper care.  See, e.g., Thomas v. Arevalo, 1998 WL 427623, at *9 (S.D. N.Y.  July 28, 1998) ("There is evidence sufficient to support an inference that the State Defendants and defendant Kalnins considered plaintiff a possible malingerer.  A reasonable jury could infer that defendants had a motive for failing to take plaintiff's complaints seriously based on this characterization.") (internal citations to evidence omitted); Martin v. County of Sacramento, 2010 WL 670784, at *16-17 (E.D. Cal. Feb. 19, 2010) (denying summary judgment where there was no evidence that a prison doctor had obtained prisoner's past medical records in order to fully evaluate the medical needs that could be deliberate indifference); Walker v. Benjamin, 293 F.3d 1030, 1040 (7th Cir. 2002) ("The fact that Nurse Dunbar and Dr. Benjamin may have based their refusal to treat Walker's pain on a good-faith belief that he was malingering, that he was not in pain but was merely trying to get high with the narcotic painkiller, is an issue for the jury.").

26 George v. Sonoma County Sheriff's Dept., 2010 WL 4117381 (N.D. Cal. 2010).

1     Here, aside from the fact that plaintiff informed defendant Whitted that plaintiff
2 was depressed, the fact that plaintiff was assigned to the EOP demonstrates that plaintiff had a
3 serious mental disorder.  (See n.1 infra.)  Plaintiff alleges that the EOP "is reserved for the more
4 severe cases of mental illness."  (Dkt. No. 59 at 4.)  Plaintiff could only be assigned to the EOP
5 by order of a medical professional.  Therefore, even if defendants thought plaintiff was faking it,
6 mental health professionals did not think so, as plaintiff was assigned to the EOP by a medical
7 professional.  Defendants are not medical or mental health professionals.  Thus, it was not
8 defendants' responsibility to decide plaintiff was "faking it," and even if they believed plaintiff
9 was faking it, it was arguably deliberately indifferent for them to act recklessly despite plaintiff's
10 mental illness.  Moreover, because plaintiff was assigned to the EOP rather than the CCMS, it
11 was important for plaintiff to receive mental health treatment based on his serious mental illness.
12 Thus, based on plaintiff's assignment to the EOP, rather than the CCMS, as well as defendants'
13 role as custody staff rather than medical professionals, and their assignment to work on B Facility
14 which housed inmates assigned to the EOP, the risk to plaintiff's mental health if defendants
15 interfered with his mental health treatment should have been obvious to a reasonable correctional
16 officer.  While the obviousness of the risk is not conclusive, defendants cannot avoid liability by
17 claiming plaintiff was "faking it" if the evidence shows that they refused to acknowledge
18 plaintiff's legitimate assignment to the EOP.  Farmer, 511 U.S. at 842.
19     Defendants also contend that plaintiff failed to allege sufficient facts showing that
20 defendants caused plaintiff harm.
21     The Civil Rights Act under which this action was filed provides as follows:
22     Every person who, under color of [state law] . . . subjects, or causes
    to be subjected, any citizen of the United States . . . to the
23     deprivation of any rights, privileges, or immunities secured by the
    Constitution . . . shall be liable to the party injured in an action at
24     law, suit in equity, or other proper proceeding for redress.
25 42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the
26 actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

7

Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Here, plaintiff alleges that defendants knew plaintiff was enrolled in the EOP, yet decided on their own that plaintiff was "faking it," and took steps to interfere with plaintiff's mental health treatment by attempting to have plaintiff removed from the EOP. Taking plaintiff's allegations as true, defendants' actions, despite plaintiff's assignment to the EOP, raise an inference that defendants intentionally interfered with plaintiff's mental health treatment by threatening to have plaintiff removed from the EOP, by taking steps to have plaintiff removed from the EOP, by interfering with plaintiff's ability to attend his mental health groups on several occasions, and arguably by destroying plaintiff's personal property during cell searches. The statements that defendants made to plaintiff raised an inference that they were involved with his inability to attend his mental health groups. Dr. Vasquez's statement to plaintiff as to why plaintiff was being transferred back to the CCMS level of care, to the effect that plaintiff had "pissed off corrections staff and they want you out of this facility," raises an inference that defendants were involved. These allegations, liberally construed, are sufficient to demonstrate affirmative acts or participation in another's affirmative acts to cause the alleged deprivation.

Although defendants dispute these allegations, this is not a motion pursuant to Rule 56. Plaintiff has set forth sufficient allegations to proceed on his claim that defendants were deliberately indifferent to his serious medical needs.

////

1    The court now turns to the issue of harm.  When a claimed Eighth Amendment
2 violation results from a delay in medical treatment, the delay must cause some sort of harm.  <u>Id.</u>
3 "However, a finding that the defendant's activities resulted in 'substantial' harm to the prisoner
4 is not necessary." <u>Id.</u>; <u>see</u> also <u>Hudson v. McMillian</u>, 503 U.S. 1, 8-9 (1992) (rejecting
5 "significant injury" requirement and noting that the Constitution is violated "whether or not
6 significant injury is evident").  "[N]either a finding that a defendant's actions are egregious or
7 that they resulted in significant injury to a prisoner is required in order to establish a violation of
8 the prisoner's federal constitutional rights and create a cause of action under § 1983."
9 <u>McGuckin</u>, 974 F.2d at 1060 (internal citations omitted).

10   Here, it appears plaintiff claims that his attempt at suicide on October 3, 2007,
11 was due, at least in part, to defendants' actions.  Defendants argue that plaintiff fails to allege
12 facts connecting defendants' actions to plaintiff's suicide attempt, or to the October 2, 2007
13 transfer to administrative segregation.

14   However, plaintiff also alleges that on July 31, 2007, plaintiff's level of care was
15 reduced from EOP to CCMS, and that Dr. Vasquez told plaintiff that his "hands are tied on this
16 one Mr. Graham . . . apparently you've pissed the corrections staff off and they want you out of
17 this facility." (Dkt. No. 59 at 6.)  This allegation raises an inference that defendants Whitted and
18 Jubb, who are corrections staff, and who allegedly threatened to have plaintiff removed, were
19 responsible for plaintiff's move from B Facility to C Facility on July 31, 2007.  (Dkt. No. 59 at
20 6.)  Although defendants argue that plaintiff "remained free of suicide attempts or other harm"
21 during plaintiff's transfer to the CCMS level of care for over a month, plaintiff alleges that his
22 mental state deteriorated during this period, and he "became more and more psychotic and
23 depressed." (Dkt. No. 59 at 6.)  Plaintiff is not required to demonstrate that he attempted suicide
24 in order to demonstrate harm under the Eighth Amendment.  Rather, an alleged deterioration in
25 plaintiff's mental state is sufficient harm to state a cognizable civil rights claim.
26 ////

B. Conclusion

Accordingly, this court finds that defendants' motion to dismiss the TAC based on an alleged failure to state a cognizable Eighth Amendment claim should be denied.

V. Request for Extension of Time

Because the court recommends denying defendants' motion to dismiss, further opposition by plaintiff was not required. Thus, plaintiff's motions for extension of time (dkt. nos. 68, 69) are denied as moot.

VI. Request for Appointment of Counsel

On April 6, 2012, plaintiff filed a motion for appointment of counsel. On April 19, 2012, plaintiff renewed this motion.

On March 20, 2012, plaintiff was transferred to the California Medical Facility for mental health treatment and therapy, without his legal materials. Plaintiff was also informed that he would be moved to the Department of Mental Health for further treatment, and would not receive his legal materials until that transfer is complete.

District courts lack authority to require counsel to represent indigent prisoners in section 1983 cases. Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989). In exceptional circumstances, the court may request an attorney to voluntarily to represent such a plaintiff. See 28 U.S.C. § 1915(e)(1); Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990). When determining whether "exceptional circumstances" exist, the court must consider plaintiff's likelihood of success on the merits as well as the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (district court did not abuse discretion in declining to appoint counsel). Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that would warrant a request for voluntary assistance of counsel. Wood, 900 F.2d at 1335-36.

The court has considered the factors under Palmer.  Based on the procedural posture of this case, the court cannot determine plaintiff's likelihood of success on the merits.  However, plaintiff is able to articulate his claims.  The TAC contains straightforward claims of deliberate indifference to serious medical needs against two defendants.  Thus, the court does not find the required exceptional circumstances, and plaintiff's motions for the appointment of counsel are denied without prejudice.  However, based on plaintiff's present medical condition, the court recommends that this action be stayed for a period of four months following resolution of the instant findings and recommendations.

VII.   Order and Recommendations

Accordingly, IT IS HEREBY ORDERED that:

1.   Plaintiff's April 6, 2012 and April 19, 2012 motions for extensions of time (dkt. nos. 68, 69) are denied;

2.   Plaintiff's April 6, 2012 and April 19, 2012 motions for appointment of counsel (dkt. nos. 68, 69) are denied without prejudice; and

IT IS RECOMMENDED that:

1.   Defendants' February 2, 2012 motion to dismiss (dkt. no. 62) be denied;

2.   This action be stayed for a period of four months after the district court issues an order addressing the instant findings and recommendations; and

3.   Defendants be directed to file an answer within fourteen days of any court order lifting the stay of this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 2, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

grah2533.mtd